**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MARIE ABDELMESSIH, individually and on behalf of all others similarly situated, <br><br>                 Plaintiff, <br> v. <br><br> FIVE BELOW INC. <br>                 Defendant. | Case No.: 2:19-cv-1487 <br><br> **PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM IN SUPPORT** |

### I.  INTRODUCTION

On November 22, 2019, Plaintiff Marie Abdelmessih ("Plaintiff" or "Representative Plaintiff") and Defendant Five Below Inc. ("Defendant" of "Five Below" and together with Plaintiff, the "Parties"), with the assistance of mediator Bennett G. Picker, *Esq*., reached a settlement (the "Settlement"), which seeks to resolve all claims in the above-captioned action (the "Litigation").[1]  Pursuant to the terms set forth in the Parties' Settlement Agreement (the "Settlement Agreement") (attached hereto as **Exhibit 1**), Plaintiff now respectfully asks the Court to enter an order, in substantially similar form to Exhibit D to the Settlement Agreement:

(1) preliminarily approving the Settlement,

(2) provisionally certifying the Settlement Class (defined below and also referred to as "Class") for settlement purposes only,

(3) directing that notice of the Settlement be disseminated to members of the Settlement Class ("Settlement Class Members" or "Class Members") in the form and manner

---

[1] Unless otherwise defined, capitalized terms have the same meaning attributed to them in the Settlement Agreement, attached hereto as Exhibit 1, and cited to as "S.A."

proposed therein,

(4) appointing Plaintiff as the Settlement Class Representative,

(5) appointing Patrick A. Barthle of Morgan & Morgan Complex Litigation Group and Charles E. Schaffer of Levin Sedran & Berman LLP as Class Counsel for the Settlement Class,

(6) appointing of RG/2 as the Settlement Administrator,

(7) scheduling a Final Approval Hearing to consider whether the Settlement should be finally approved, and

(8) staying all further proceedings in the Litigation.

Preliminary approval of the proposed Settlement is warranted for numerous reasons. First, judicial policy favors pretrial settlements. *In re Gen Motors Corp. Pick-up Truck Fuel Tank prods. Liab. Litig.,* 55 F.3d 768, 784 (3d Cir. 1995) ("The preliminary determination establishes an initial presumption of fairness."); *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010) (noting the presumption in favor of settlement is "especially strong in class actions and other complex cases where substantial juridical resources can be conserved by avoiding formal litigation") (citation and quotation marks omitted); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation and it should therefore be encouraged.").

Second, the valuable benefits made available pursuant to the Settlement squarely address the issues raised in the Litigation and provide significant relief to Settlement Class Members. The Settlement provides both monetary relief (to compensate Settlement Class Members for inconveniences and losses) and provides that Defendant will confirm its data security business practices designed to prevent a reoccurrence of the release of sensitive personal information to

2

unauthorized individuals.  The Settlement also compares favorably with settlements in similar litigation and was reached only after intensive, arm's-length negotiations before a skilled mediator. Accordingly, Plaintiff respectfully submits that the Court should approve the terms and conditions of the Settlement and provide for notice to be distributed to the Settlement Class.

## II.    OVERVIEW OF PLAINTIFF'S CLAIMS, THE LITIGATION, AND THE MEDIATION

This Litigation was filed as a class action against Five Below for negligence, invasion of privacy, breach of implied contract, negligence *per se*, breach of fiduciary duty, violation of Florida's Deceptive and Unfair Trade Practices Act, and breach of confidence.  Specifically, the operative complaint (the "Complaint," Doc. 1) in the Litigation alleges that Five Below failed both to properly secure and safeguard the payment card data ("PCD") and personally identifiable information ("PII") (collectively "Customer Data") of its on-line customers and provide them with timely, accurate, and adequate notice when such information had been compromised by an unauthorized third party ("the Security Incident").

Plaintiff filed an original Complaint against Five Below on April 8, 2019.  Just days after filing the Complaint, counsel for the Parties engaged in initial discussions regarding potential resolution of the case.  Declaration of Patrick A. Barthle in Support of Plaintiff's Unopposed Motion For Preliminary Approval of Class Action Settlement ("Barthle Decl."), attached as **Exhibit 2**, at ¶ 11.  In light of these ongoing discussions, including Plaintiff's initial settlement demand in May 2019, Defendant (1) accepted service of the Complaint (Doc. 2), and (2) sought and was granted a stipulated extension of time to respond to the Complaint. *See* (Doc. 3) (noting that "the parties are in the process of exploring a potential early resolution of this matter").  Barthle Decl. ¶ 12.

3

On July 15, 2019, Five Below filed a Motion to Dismiss.  (Doc. 11).  Yet, resolution discussions continued, and hence, motions for extensions of time to respond to the Motion to Dismiss and a Joint Motion to Stay Briefing Pending Settlement Discussions were eventually filed and granted, (Doc's 12–18).  On November 22, 2019, the Parties, through their respective counsel, engaged in mediation with mediator Bennett G. Picker and were able to reach a negotiated resolution to the Litigation on a class-wide basis that provides both monetary relief for Class Members and changes to Defendant's data security business practices.  Barthle Decl. ¶ 14.  On November 29, 2019, the Parties advised the Court of the Settlement. (Doc. No. 22).

Proposed Class Counsel were able to negotiate a resolution for the Class that is fair, reasonable, adequate, and in the best interests of the Settlement Class.  Barthle Decl. ¶¶ 21, 23, 35, 36.  Consequently, the Parties worked together to negotiate, finalize, and memorialize a comprehensive set of settlement documents, which are embodied in the Settlement Agreement and the exhibits attached thereto.

## III.    THE PROPOSED SETTLEMENT

### A.  Proposed Settlement Class

The Settlement contemplates relief for the following proposed Settlement Class as defined in the Settlement Agreement:

> [A]ll persons residing in the United States who used a payment card to make a purchase on the Five Below website checkout page during the Security Incident.

S.A. ¶ 1.24.  Excluded from the Class are (i) Five Below and its officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) the Judge assigned to evaluate the fairness of this settlement; (iv) the attorneys representing the Parties in the Litigation; and (v) any other Person found by a court of competent jurisdiction

to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Security Incident or who pleads *nolo contendere* to any such charge. *Id.*

### B. Proposed Settlement Terms

The Settlement provides monetary relief for affected class members and data security business practices to prevent recurrence of the issues experienced here. The valuable benefits made available pursuant to the Settlement squarely address the issues raised in the Litigation and provide significant relief to the Settlement Class Members.

### 1.    Business Practices

Five Below agrees to provide Plaintiff confirmation that it has adopted certain data security measures, including, hiring a dedicated IT security employee, and that, on annual basis, it has implemented penetration testing, employee training related to data security, and an annual audit conducted by a Qualified Security Accessor for compliance with the Payment Card Industry Data Security Standard. Five Below agrees to provide Plaintiff information about these practices for a period of three years following the execution of the Settlement Agreement. S.A. ¶ 2.4.

### 2.    Compensation to Settlement Class Members

Defendant will also make the monetary relief described below available to Settlement Class Members through a claims process. All Settlement Class Members who submit a valid claim using the Claim Form are eligible for reimbursement of expenses, up to $250 per Settlement Class Member, that were incurred as a result of the Security Incident. Reimbursable expenses include: (i) unreimbursed bank fees; (ii) unreimbursed card reissuance fees; (iii) unreimbursed overdraft fees; (iv) unreimbursed charges related to unavailability of funds; (v) unreimbursed late fees; (vi) unreimbursed over-limit fees; (vii) long distance telephone charges; (viii) cell minutes (if charged by minute), Internet usage charges (if charged by the minute or by the amount of data usage and

incurred solely as a result of the Security Incident), and text messages (if charged by the message and incurred solely as a result of the Security Incident); (ix) unreimbursed charges, including fraudulent charges, from banks or credit card companies; (x) postage; (xi) interest on payday loans due to card cancelation or due to over-limit situation; and (xii) costs of credit report(s) purchased by Settlement Class Members.  S.A. ¶¶ 2.1, 2.1(a).

Importantly, lost time—a prominent issue for Class Members in responding to any data breach—is also compensable under the Settlement.  Specifically, Class Members with documented fraudulent charges can receive compensation for up to five (5) hours, calculated at the rate of $20 per hour. S.A. ¶ 2.1(b)(i).  Class Members without documented fraudulent charges can receive reimbursement for up to three (3) hours of time, calculated at the rate of $20 per hour, for time spent dealing with replacement card issues or otherwise dealing with the Security Incident.  S.A. ¶ 2.1(b)(ii).

Moreover, Class Members with documented fraudulent charges are also eligible for a $22 payment for each credit or debit card on which documented fraudulent charges were incurred, even where those charges were ultimately reversed.  S.A. ¶ 2.1(c).

The aggregate limit for reimbursable expenses, lost time, and for cards with documented fraudulent charges is $112,000.00.  S.A. ¶ 2.3.  If the total claims exceed the cap, each Settlement Class Member's claim shall be reduced on a pro rata basis.  *Id.*

The Settlement will be administered via a Claims Administration process, whereby Class Members seeking reimbursement will complete and submit a written Claim Form, providing documentation as stated on the Claim Form, to the Claims Administrator, postmarked on or before the 120th day after the deadline for the completion of notice (the "Claims Deadline").  S.A. ¶¶ 2.5, 2.6.  The Claim Form must be verified by the Settlement Class Member with a statement that his

or her claim is true and correct, to the best of his or her knowledge and belief, and is made under penalty of perjury; notarization shall not be required. *Id.*; *see also* S.A. § IV.8.

### C.    Attorney's Fees, Costs, Expenses and Service Award

The Parties did not discuss the payment of attorneys' fees, costs, expenses and/or the service award until after the substantive terms of the settlement had been agreed upon. S.A. ¶ 7.1; Barthle Decl. ¶ 24. Pursuant to the Settlement, Plaintiff may request an award of fees, costs, and expenses of no more than $93,750. S.A. ¶ 7.2. Plaintiff may also request a service award for Representative Plaintiff of $1,500. S.A. ¶ 7.3. Importantly, these amounts are to be paid by Defendant separate and apart from the monetary relief otherwise made available to the Settlement Class (S.A. ¶¶ 7.2, 7.3), and thus, will not otherwise reduce the amounts available for claimants. Barthle Decl. ¶ 24.

### D.    Notice and Administration

Five Below has also agreed to pay for all costs for notice to the Settlement Class, Costs of Claims Administration, and the costs of Dispute Resolution. S.A. ¶ 2.7. These amounts also will be provided separate and apart from the monetary relief otherwise made available to the Settlement Class, and thus, will not reduce the amounts available for claimants. Barthle Decl. ¶ 22.

The Settlement provides a robust notice plan, set forth in its Exhibit C, which includes email notice, as well as a dedicated settlement website and a toll-free help line staffed with live operators. S.A. ¶ 3.4, and its Exhibit. C. The Claims Administrator also will provide copies of the forms of Notice and Claim Form approved by the Court, as well as this Settlement Agreement, upon request from Settlement Class Members. S.A. ¶ 3.4.

The Parties have agreed to RG/2 as the proposed Claims Administrator. RG/2 is a national, class action claims administration firm comprised of seasoned class action practitioners, highly

credentialed tax professionals, forensic accountants, and IT professionals with over 100 years of experience working in the field of class action litigation and settlement administration.

## IV.    THE COURT SHOULD PROVISIONALLY CERTIFY THE SETTLEMENT CLASS

Class action certification in conjunction with settlement is well recognized.  *See, e.g.*, *Sullivan v. DB Investments, Inc*., 667 F.3d 273, 311 (3d Cir. 2011); *In re Processed Egg Products Antitrust Litigation*, 284 F.R.D. 249, 253-254 (E.D. Pa. 2012).  To do so, the Court must consider whether the settlement class proposed is appropriate under Fed. R. Civ. P. 23.  *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *Rodriguez v. City National Bank*, 726 F.3d 372, 380 (3d Cir. 2013); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 527 (3d Cir. 2004); *Sullivan*, 667 F.3d at 296; *Processed Egg*, 284 F.R.D. at 253-54.  The *Manual for Complex Litigation (Fourth)* advises that in cases presented for both preliminary approval and class certification, the "judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)."  MCL 4th, § 21.632.

Under Rule 23(a), Plaintiff must demonstrate that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defense of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Under Rule 23(b)(3), Plaintiff must also demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The Court is to apply a "rigorous analysis" to ensure that each of the requirements of Rule 23 are met.  *See Sullivan*, 667 F.3d at 306.  However, when a court is "[c]onfronted with a request for settlement-only class certification, a district court need

not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620; *see also Sullivan*, 667 F.3d at 322 n.56 (same).  Under the rigorous analysis standard, the Settlement easily meets each of the requirements of Rule 23(a) and Rule 23(b)(3) for the proposed Settlement Class.

## A.    The Class is Sufficiently Numerous

Rule 23(a)(1) requires that a class be "so numerous that their joinder before the Court would be impracticable."  *In re Blood Reagents Antitrust Litig.*, 283 F.R.D. 222, 232 (E.D. Pa. 2012; *Fry v. Hayt, Hyat & Landau,* 198 F.R.D. 461, 467 (E.D. Pa. 2000 ("the class size only need be large enough that it makes joinder impracticable.").  The numerosity requirement of Rule 23(a) is, therefore, easily met here because based on Five Below's records, the Class includes approximately 56,000 individuals.  Barthle Decl. ¶ 35.  *See Stewart v. Abraham*, 275 F.3d 220, 227-28 (3d Cir. 2001) (noting that there is no minimum number to satisfy numerosity and observing that generally requirement is met if potential number of plaintiffs exceeds 40).  In addition, Class Members are geographically dispersed throughout the United States.  There can be no dispute, therefore, that the proposed Class meets the numerosity requirement.

## B.    Common Questions of Law or Fact Exist

Rule 23(a)(2) requires a showing of the existence of "questions of law or fact common to the class."  "A finding of commonality does not require that all class members share identical claims." *In re Warfarin*, 391 F.3d at 530 (citation and internal quotation marks omitted).  Indeed, the commonality element requires only that plaintiffs "share at least one question of fact or law with the grievances of the prospective class."  *Id.* at 527-28 (citations omitted); *Stewart v. Abraham,* 275 F.3d. 220., 227 (3d Cir. 2001).  Applying these principles, it is evident that the commonality requirement of Rule 23(a)(2) is easily met in this case.

Here, the central issues posed by this litigation are:

a.  Whether and to what extent Defendant had a duty to protect the PCD/PII of Class members;

b.  Whether Defendant was negligent in collecting and storing Plaintiff's and Class members' PCD/PII;

c.  Whether Defendant had a duty not to disclose the PCD/PII of Class members to unauthorized third parties;

d.  Whether Defendant took reasonable steps and measures to safeguard Plaintiff's and Class members' PCD/PII;

e.  Whether Defendant failed to adequately safeguard the PCD/PII of Class members;

f.  Whether Defendant breached its duty to exercise reasonable care in handling Plaintiff's and Class members' PCD/PII;

g.  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Security Incident;

h.  Whether implied contracts existed between Defendant, on the one hand, and Plaintiff and Class members on the other;

i.  Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class members that their PCD/PII had been compromised;

j.  Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PCD/PII of Class members;

k.  Whether Class members are entitled to actual, damages, statutory damages, and/or punitive damages as a result of Defendant's wrongful conduct;

l. Whether Plaintiff and Class members are entitled to restitution as a result of Defendant' wrongful conduct; and,

m. Whether Class members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Security Incident.

*See, e.g.*, (Doc. 1, ¶ 69). In short, Plaintiff's liability case depends on questions that can be resolved using the same evidence for all class members, and thus, presents the precise type of questions that makes a class-wide adjudication worthwhile. This case involves a discreet cybersecurity incident that impacted *all* Class Members and gives rise to claims under state law that *all* share the same common nucleus of fact and law regarding Defendant's duty of care in maintaining the Class's PII/PCD. These are common questions that can be answered with common proof on a class-wide basis. Given the presence of these common questions central to the litigation, Rule 23(a)(2)'s requirements are met.

### C. Plaintiff's Claims are Typical of Those of the Settlement Class

Rule 23(a)(3) requires that the class representative's claims be "typical of the claims . . . of the class." As the Third Circuit explained:

> The typicality inquiry is intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented.

*Baby Neal v. Casey*, 43 F.3d 48, 57-58 (3d Cir. 1994); *see also In re Warfarin*, 391 F.3d at 532 (finding typicality prong met where "claims of representative plaintiffs arise from the same alleged wrongful conduct"); *In re Blood Reagents*, 283 F.R.D. at 233 ("If a plaintiff's claim arises from the same event, practice or course of conduct that gives rises to the claims of the class members, factual differences will not render that claim atypical if it is based on the same legal theory as the claims of the class.") (citation and quotation marks omitted). "The typicality criterion focuses on

whether there exists a relationship between the plaintiff's claims and the claims alleged on behalf of the class." NEWBERG ON CLASS ACTIONS § 3:13.

Here, Plaintiff has claims not only similar, but virtually identical, to members of the Settlement Class and one another. (Doc. 1 ¶ 70). Indeed, Plaintiff's claims are typical of those of other Class Members because Plaintiff's PCD/PII, like that of every other Class member, was part of the Security Incident. *Id.* Further, Plaintiff's claims are typical of those of the other Class Members because, *inter alia*, all Members of the Class were injured through the common misconduct of Defendant. Plaintiff is advancing the same claims and legal theories on behalf of herself and all other Class members, and there are no defenses that are unique to Plaintiff. In order to prevail, therefore, Plaintiff and each Class Member will be required to make the same factual presentation and legal argument with respect to the common questions of liability.

In other words, "the interests of the putative class members [are] sufficiently parallel" to those of Plaintiff "to ensure a vigorous and full presentation of all potential claims for relief by the putative class representatives." *Franks v. O'Connor Corp.,* No. CIV. A. 92-0947, 1993 WL 76212, at *5 (E.D. Pa. Mar 17, 1993); *see also Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 23 (3d Cir. 1992) ("Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rises to the claims of the class members and if based on the same legal theory.") Accordingly, the typicality requirement is satisfied.

### D.    Plaintiff Will Adequately Protect the Interests of the Settlement Class

Rule 23(a)(4)'s adequacy prong requires that "the representative parties will fairly and adequately protect the interests of the class." The Third Circuit consistently has ruled that adequate representation depends on two factors:

(a) the Plaintiffs' attorney must be qualified, experienced and generally able to conduct the proposed litigation; and

(b) the Plaintiffs must not have interests antagonistic to those of the class.

*Weiss v. York Hosp.*, 745 F.2d 786, 811 (3d Cir. 1984) (quoting *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 247 (3d Cir. 1975)); *see also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 312 (3d Cir. 1998). These two components are designed to ensure that class members' interests are fully pursued.

    1.   <u>The Class Has Been Adequately Represented by Proposed Class Counsel</u>

Plaintiff has selected and retained as counsel for the Settlement Class: Patrick A. Barthle of Morgan & Morgan Complex Litigation Group and Charles E. Schaffer of Levin Sedran & Berman LLP (collectively, "Proposed Class Counsel"). Barthle Decl. ¶ 15. These attorneys possess extensive experience prosecuting class actions, particularly data breach and data disclosure cases, throughout the nation. *Id.* ¶¶ 5–7, 15, 36 and its Exhibits A and B. Proposed Class Counsel and their firms are vastly experienced in litigating and resolving data breach class actions and have developed a strong understanding of the strengths and weaknesses present in such cases and the types of settlement that are fair, reasonable, and adequate under the circumstances. *Id.*

Proposed Class Counsel investigated and analyzed the facts and circumstances relevant to the claims brought by Plaintiff in this case. *Id.* ¶¶ 9, 16, 26. The information obtained through this process provided a sound basis that allowed Proposed Class Counsel to weigh the terms of the Settlement against the risks of continued litigation. In addition, the terms of the Settlement are favorable to the Class and meet the demands in the complaint.

    2.   <u>The Class Representative's Interests Are Not Antagonistic to Those of the Class</u>

There is nothing to suggest that Plaintiff has interests antagonistic to those of the Settlement Class. *See Dietrich v. Bauer,* 192 F.R.D. 119, 126 (S.D.N.Y. 2000) ("[G]auging the adequacy of

representation requires an assessment whether the class representative have interests antagonistic to those of the class they seek to represent."). Here, Plaintiff and the Settlement Class are equally interested in proving the case as alleged in the Complaint and desire the same outcome in this Litigation, namely, to retrieve the best possible relief from the Defendant. Indeed, Plaintiff's claims coincide identically with the claims of the Settlement Class. Because of this, Plaintiff has vigorously prosecuted this case for the benefit of all members of the Settlement Class. Barthle Decl. ¶ 25. There is no conflict or any antagonism between Plaintiff and the Settlement Class. *Id*. Accordingly, Plaintiff has the ability and incentive to represent the claims of the Settlement Class vigorously.

Having demonstrated that each of the requirements of Rule 23(a) are satisfied, Plaintiff now turns to consideration of the factors which justify class treatment under Rule 23(b)(3).

**E. The Settlement Class Satisfies the Predominance and Superiority Requirements of Rule 23(b)(3).**

Certification is appropriate under Rule 23(b) when common questions of law or fact predominate over any individual questions and a class action is superior to other available means of adjudication. *Amchem*, 521 U.S. at 591-94. These requirements are satisfied here.

1. Common Questions of Law or Fact Predominate

Under Rule 23(b)(3), class certification is appropriate if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In analyzing the predominance factor, the Supreme Court has defined this inquiry as establishing "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 622. This requirement is satisfied when "common questions represent a significant aspect of a case

and . . . can be resolved for all members of a class in a single adjudication." *See Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802, 815 (7th Cir. 2012) (quoting 7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedures § 1778 (3d ed. 2011)). Moreover, any variations in state law here do not outweigh the predominance of factual and legal issues with respect to the constellation of claims in this case in the settlement context. *See Sullivan*, 667 F.3d at 297 ("[V]ariations in state law do not necessarily defeat predominance; and [] concerns regarding variations in state law largely dissipate when a court is considering the certification of a settlement class.").

Common questions represent a significant aspect of this case. Several case-dispositive questions could be resolved identically for all members of the Settlement Class, such as whether Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting the PCD/PII of Plaintiff and Class Members; whether Defendant took reasonable steps and measures to safeguard Plaintiff's and Class members' PCD/PII; and whether Defendant adequately, promptly, and accurately informed Plaintiff and Settlement Class Members that their PCD/PII had been compromised. Thus, Class Members have an interest in adjudication of the issues of law and fact that predominate this litigation, *i.e.*, whether Defendant failed to meet its obligations pertaining to the alleged improper disclosure of the Settlement Class Members' PCD/PII. Accordingly, this prong of Rule 23(b) is satisfied.

### 2. A Class Action is the Superior Method of Adjudicating This Case

The second prong of Rule 23(b) is likewise satisfied by the proposed Settlement. As explained in *Amchem,* "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Pro. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem*, 521 U.S.

at 620.  Thus, any manageability problems that may have existed in this case are eliminated by the proposed Settlement.

In addition, the Settlement Agreement renders this class action superior to other potential avenues of recovery for Plaintiff and the Class.  In fact, this case presents a paradigmatic example of a dispute resolution that effectuates the fundamental goals of Rule 23: (1) to promote judicial economy through the efficient resolution of multiple claims in a single action; and (2) to provide persons with smaller claims, who would otherwise be economically precluded from doing so, the opportunity to assert their rights.  Fed. Prac. & Proc. Civ. § 754 (2d ed.).  At the same time, the Settlement also preserves the due process rights of each member of the class seeking damages.  Accordingly, Plaintiff respectfully requests that the Court provisionally certify the Settlement Class for settlement purposes.

**V.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL**

   **A.  Applicable Legal Standard for Approval of a Settlement**

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of the compromise of claims brought on a class basis.  Recent revisions to Rule 23(e)—effective on December 1, 2018—standardized the analysis needed at the preliminary approval stage.  The Advisory Committee also noted, however, that "[t]he goal of this amendment is not to displace any factor" previously considered in any given Circuit. Fed. R. Civ. P. 23 (advisory committee notes, 2018 Amendments); *see also, e.g.*, 4 Newberg on Class Actions § 13:58 (5th ed.) ("[V]arious pre-existing legal factors not captured by amended Rule 23(e)(2)'s list of factors may prove relevant in particular cases.").  Under either set of standards, the Settlement here is fair, reasonable, and adequate and should be preliminarily approved.

First, amended Rule 23(e)(1) provides that notice should be given to the class, and hence,

preliminary approval should be granted, where the Court "will likely be able to" (i) finally approve

the settlement under Amended Rule 23(e)(2), and (ii) certify the class for settlement purposes.

Fed. R. Civ. P. 23(e)(1)(B)(i)–(ii).  As explained above, the Class here meets the criteria for

certification of a settlement class, including all aspects of numerosity, commonality, typicality,

adequacy, and predominance.  Rule 23(e)(1)(B)(ii) is therefore met.

As to Rule 23(e)(1)(B)(i), final approval is proper under the amended rule upon a finding

that the settlement is "fair, reasonable, and adequate" after considering whether:

> (A) the class representatives and class counsel have adequately represented
> the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief
>> to the class, including the method of processing class-member
>> claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including
>> timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e).

On the other hand, historically, a court's review of preliminary approval was less stringent

than during final approval.  *See Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467, 472 (E.D. Pa.

2007);  MCL 4th § 21.63 (2004) ("At the stage of preliminary approval, the questions are simpler,

and the court is not expected to, and probably should not, engage in analysis as rigorous as is

appropriate for final approval.").  There need not be a "definitive proceeding on the fairness of the

proposed settlement," and the court must make clear that "the determination permitting notice to

members of the class is not a finding that the settlement is fair, reasonable and adequate."

*Processed Egg*, No. 08-md-02002, (E.D. Pa. July 15, 2010) (Order Preliminarily Approving Settlement at 3 n.1) (D.E. #387) (quoting *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983)); *see also In re General Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) (distinguishing between preliminary approval and final approval); *In re Automotive Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 WL 1068807, at *1-2 (E.D. Pa. May 11, 2004) (same).

Here, as explained below, there are no grounds to doubt the fairness of the proposed Settlement and Plaintiff, without opposition from Defendant, respectfully requests that this Court preliminarily approve the proposed Settlement.

### B. The Proposed Settlement Satisfies the Amended Rule 23(e) Standard for Preliminary Approval

#### 1. Adequacy of Representation

As explained above, Plaintiff has retained attorneys with extensive experience prosecuting class actions, particularly data breach and data disclosure cases, throughout the nation and who have zealously represented the Class at all times. *Supra* § IV.D.1  Likewise, there is no conflict or any antagonism between Plaintiff and the Settlement Class; to the contrary, Plaintiff has vigorously prosecuted this case for the benefit of all members of the Settlement Class. *Supra* § IV.D.2.

#### 2. Arm's-Length Negotiations

The Settlement resulted from arm's-length negotiations between experienced counsel with an understanding of the strengths and weaknesses of their respective positions in this Litigation, assisted by a skilled and neutral mediator. Barthle Decl. ¶¶ 14, 17, 20, 30. These circumstances weigh in favor of approval. *See In re Nat'l Football League Players' Concussion Injury Litig.*, 301 F.R.D. 191, 198 (E.D. Pa. 2014) (citing *In re CIGNA Corp. Sec. Litig.*, No. 02-8088, 2007

WL 2071898, at *2 (E.D. Pa. July 13, 2007) (noting that a presumption of fairness exists where parties negotiate at arm's length, assisted by a retired federal judge who was privately retained and served as a mediator)); *Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 439, 444 (E.D. Pa. 2008) (stressing the importance of arms-length negotiations and highlighting the fact that the negotiations included "two full days of mediation"); *In re Auto. Refinishing Paint Antitrust Litig*, MCL No. 1426, 2004 WL 1068807, at *2 (E.D. Pa. May 11, 2004) (preliminarily approving class action settlement that "was reached after extensive arms-length negotiation between very experienced and competent counsel"); *see also* NEWBERG ON CLASS ACTIONS § 11:41 (noting that courts usually adopt "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval").

Specifically, the Mediator, Bennet G. Picker, has successfully resolved several hundred domestic and international commercial disputes with a cumulative value of several billion dollars, including multiple data breach matters. *See* https://www.mediate.com/author/Bennett-G.-Picker/112 (last visited Jan. 24, 2020); Barthle Decl. ¶ 20. The Parties spent significant time preparing for the mediation—including joint and separate pre-mediation calls with Mr. Picker—and negotiating the terms of the final written Settlement Agreement, which is now presented to the Court for approval. Barthle Decl. ¶ 20. At all times, these negotiations were at arm's length and, while courteous and professional, the negotiations were intense and hard-fought on all sides. *Id.*

### 3. The Relief Provided for The Class Is Adequate

The relief offered by the Settlement is adequate considering the risks of continued litigation. Although Plaintiff is confident in the merits of her claims, the risks involved in prosecuting a class action through trial cannot be disregarded. Barthle Decl. ¶¶ 30–34. Plaintiff's claims would still need to survive motions practice (*e.g.*, a motion to dismiss and motion for summary judgment) and succeed on a motion for class certification.

Almost all class actions involve a high level of risk, expense, and complexity, which is one reason that judicial policy so strongly favors resolving class actions through settlement: "[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged." *In re Warfarin*, 391 F.3d at 535; *see also In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 144 (D.N.J. 2013) ("'The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'") (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)); *see also Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010).

This is not only a complex case, but it is in an especially risky field of litigation: data breach. *See, e.g.*, *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2010 WL 3341200, at *6 (W.D. Ky. Aug. 23, 2010) (approving data breach settlement, in part, because "proceeding through the litigation process in this case is unlikely to produce the plaintiffs' desired results"). Data breach cases continue to be among the most risky and uncertain of all class action litigation and certification is rare. Through the Settlement, Plaintiff and Class members gain significant benefits without having to face further risk.

While Plaintiff believes she would prevail, there is little directly analogous precedent to rely upon. Barthle Decl. ¶¶ 27–29. Class certification has been denied in other consumer data breach cases and it was only recently that the first litigation class was certified in a consumer data breach case. *See Smith v. Triad of Alabama, LLC*, 2017 WL 1044692, at *6 (M.D. Ala. Mar. 17, 2017). In the recent data breach case involving Facebook, only an injunctive relief class was certified. *See Adkins v. Facebook, Inc.*, C 18-05982-WHA, 2019 WL 7212315, at *9 (N.D. Cal.

Nov. 26, 2019). Were that to happen here, Class Members would not be able to receive monetary reimbursement and would be left to pursue individual litigation in order to recover their losses.

The lack of direct precedent creates an additional risk in achieving and maintaining class action status throughout trial and even appeal. While Plaintiff feels she would be able to obtain certification outside of a settlement context and maintain certification through trial, this is not a certainty. Barthle Decl. ¶ 29. Additionally, any potential certification would be subject to later appeal and potential reversal. Also, the cost of trial and any appeals would be significant and would delay the resolution of this litigation without the guarantee of any relief. *Id.* ¶ 28.

The adequacy of the Settlement here is highlighted by the fact that many of the payment card data breach cases that have settled resulted in far less recovery when viewed on a per class member basis than is provided here. For example, The Home Depot data breach case, which involved the theft of 40 million consumers' payment data, included, among other things, a settlement fund of $13 million from which fund consumers could seek reimbursement.[2] For the 40 million payment cards at issue, this equates to approximately .33 cents per card. *See In re the Home Depot, Inc., Customer Data Sec. Breach Litig.,* No. 1:14-MD-02583-TWT, ECF No. 181-2 (March 7, 2016) (Settlement Agreement); *id.*, 2016 WL 6902351, at *6 (N.D. Ga. Aug. 23, 2016) (order approving settlement). The Target data breach, which compromised the personal information of nearly 110 million consumers, resolved with Target establishing a settlement fund of $10 million (and separately paying $6.75 million in attorney fees). This amounts to approximately .09 cents per card. *See In re Target Corp. Customer Data Sec. Breach Litig.*, No. MDL 14-2522-PAM, ECF No. 358-1 (March 18, 2015) (Settlement Agreement); *id.*, 2017 WL

---

[2] That settlement also included an additional $6.5 million for internet and dark web monitoring and $7.5 million in attorney fees.

2178306, at *2 (D. Minn. May 17, 2017) (order approving settlement on remand from the 8th Circuit).

Indeed, even cases involving data of greater sensitivity—such as personal health information (PHI)—typically settle for a lower per class member amount than seen here. For example, *In re Anthem, Inc. Data Breach Litig.* was a case involving disclosure of, among other things, PHI/healthcare related information for 79,150,325 members. *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 307 (N.D. Cal. 2018). The total common fund for that settlement was $115 million, *id.* at 318, which included attorneys' fees of $31,050,000.00 and costs of $2,005,068.59, as well as $23 million for settlement administration, leaving the final amount to be distributed to the class at just under $82 million, or approximately $1.09 per class member. *In re Anthem, Inc. Data Breach Litig.*, 15-MD-02617-LHK, 2018 WL 3960068, at *8, *34 (N.D. Cal. Aug. 17, 2018). Similarly, *Curry v. AvMed, Inc.*, which involved the theft of PHI and Social Security numbers from a class of approximately 1.2 million people, had a settlement fund of $2,250,000 (exclusive of attorneys' fees), yielding a per capita recovery of around $1.88 per class member. Case No. 10-cv-24513-JLK, 2014 WL 7801286, at *3 (S.D. Fla. Feb. 28, 2014).

Here, the aggregate cap of $112,000.00, with a class size of approximately 56,000 individuals, provides $2.00 per Settlement Class Member. Once the separately funded costs of notice and administration, and attorneys' fees, costs, and expenses and service award are factored in, that per class member comparison only heightens.

Furthermore, the outcome embodied in the Settlement is not only as favorable as other payment card data breach class action settlements, but more favorable given that multiple other payment card data breach cases have resulted in no recovery for the plaintiff or class members. *See, e.g.*, *Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, 3:16-cv-00014-GPC-BLM (S.D.

Cal.), Doc. 56 (order dismissing payment card data breach case) (July 11, 2017); *Whalen v. Michaels Stores, Inc.*, 689 F. App'x 89 (2d Cir. 2017) (order affirming dismissal of payment card data breach case). The same is true for data breach cases involving solely PII, and not PCD. *See, e.g., Storm v. Paytime, Inc.*, 90 F. Supp. 3d 359, 368 (M.D. Pa. 2015) (dismissed for lack of standing as plaintiffs failed to demonstrate that they had suffered actual harm, such as, identity theft); *Longenecker-Wells v. Benecard Servs. Inc*, 658 F. App'x 659, 663 (3d Cir. 2016) (negligence claim barred by economic loss doctrine and breach of implied contract dismissed for failure to plead sufficient allegations).

Importantly, the Settlement also includes business practices. As discussed *supra*, the Settlement requires Defendant to provide Plaintiff confirmation that it has adopted certain data security measures, including hiring a dedicated IT security employee, as well as annual penetration testing, employee training, and audits for PCI DSS compliance by a Qualified Security Accessor for a period of three years, to ensure Defendant has implemented procedures, policies, and training to protect private and sensitive customer data and to prevent such a disclosure of PII from reoccurring. S.A. ¶ 2.4. These provisions are a key component of the Settlement and provide a significant benefit to Class Members, whose data is still possessed by Defendant and many of whom continue to shop at Five Below. Barthle Decl. ¶ 17.

Importantly, the substantial and immediate benefits achieved by the Settlement avoids the risks, uncertainties, and delays of continued litigation.

In contrast, if this case were to continue, Plaintiff and the Settlement Class would face many difficult challenges, including surviving a motion to dismiss, obtaining class certification and maintaining certification through trial, and likely motions for summary judgment. Thus, absent a settlement, Plaintiff faces serious obstacles in this matter. This is another indication that the

proposed Settlement is fair, reasonable, and adequate and should be approved. *See Craig v. Rite Aid Corp.*, No. 4:08-cv-2317, 2013 WL84928, at 9 (M.D. Pa. Jan. 7, 2013), *appeal dismissed* (3d Cir. Feb. 20, 2013) (finding preliminary approval of settlement appropriate where "[n]ot only would continued litigation of these cases result in a massive expenditure of Class Counsel's resources, it would likewise place substantial drain on judicial resources"); *In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 216 (E.D. Pa. 2014) ("[I]f the parties were to continue to litigate this case, further proceedings would be complex, expensive and lengthy, with contested issues of law and fact.... That a settlement would eliminate delay and expenses and provide immediate benefit to the class militates in favor of approval.").

The Settlement relief will be distributed via a straight-forward claims process utilizing an easy to understand and use Claim Form. SA § IV, ¶¶ 2.1, 2.6. Checks for approved claims will then be mailed and postmarked within 60 days of the Effective Date. S.A. ¶ 8.2.

Attorneys' fees, costs, and expenses were negotiated separate, apart, and only after reaching agreement on the class relief. Barthle Decl. ¶ 24; S.A. ¶ 7.1. Defendant has agreed to pay up to $93,750.00 total for attorneys' fees, costs, and expenses, as well as a Service Award of up to $1,500—both amounts to be funded separately from the aggregate cap on monetary relief available to Class Members. S.A. ¶¶ 7.2, 7.3. However the awarded amount remains wholly in the Court's discretion and no order of the Court, or modification, reversal or appeal of any order of the Court, concerning the amount(s) of any attorneys' fees, costs, expenses, and/or service award ordered by the Court will affect whether the judgment is final or constitute grounds for cancellation or termination of this Settlement Agreement. S.A. ¶ 7.5. Attorneys' fees, costs, and

expenses, in whatever amount set by the Court, will be paid within thirty days of the Effective Date.  S.A. ¶ 7.4.[3]

       4.  <u>The Proposal Treats Class Members Equitably Relative to Each Other</u>

The last requirement of the new Rule 23(e) is that the Settlement "treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  Here, the Settlement treats all Class Members equitably relative to one another because all who have been damaged are eligible to receive reimbursement for their losses proportional to damages incurred.  S.A. ¶ 2.1.

    **C.  The Settlement Also Satisfies the Historic Factors for Preliminary Approval**

Historically, preliminary approval of a settlement did not require a definitive determination of the fairness of a proposed settlement.  *In re Gen. Motors Corp.*, 55 F.3d at 785 (holding that "the preliminary determination establishes an initial presumption of fairness"); *Smith v. Prof'l Billing & Mgmt. Servs., Inc.*, No. 06-cv-04453, 2007 WL 4191749, at *1 (D.N.J. Nov. 21, 2007) (same).  Rather, a definitive determination of the fairness, reasonableness, and adequacy of a settlement was made at a Final Settlement Hearing.  *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 631, 638 (E.D. Pa. 2003);[4] *Jones v. Commerce Bancorp*, Inc., 2007 WL 2085357, at *2

---

[3] There are no Rule 23(e)(3) agreements to be disclosed here.  *See* Fed. R. Civ. P. 23(e)(2)(C)(iv).
[4] The factors considered for final approval of a class settlement as "fair, reasonable and adequate" include: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best possible recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation.  *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975). "The Court need not, however, consider the *Girsh* factors in the context of" a motion for preliminary approval of a settlement."  *Gregory v. McCabe, Weisberg & Conway, P.C.*, No. 13-cv-6962, 2014 WL 2615534, at 2 n.6 (D.N.J. June 12, 2014).

(D.N.J. July 16, 2007) ("Preliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient.").

To grant preliminary approval, a court only needed to find that: "(1) the parties' negotiations occurred at arm's length; (2) there was sufficient discovery; [and] (3) the proponents of the settlement are experienced in similar litigations."[5] *Smith*, 2007 WL 4191749, at *1. Upon such findings, a settlement agreement is entitled to a presumption of fairness and should be granted preliminary approval. *Id.*

Such approval is a matter within the discretion of the district court. *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 299 (3d Cir. 1998); *In re Lucent Techs., Inc.*, 307 F. Supp. 2d 633, 641 (D.N.J. 2004) (a court enjoys considerable discretion to determine whether a proposed settlement satisfies Rule 23 standards). In making this determination, the Court should give deference to the recommendations of experienced counsel who have engaged in arms-length settlement negotiations. *See In re Am. Family Enters.*, 256 B.R. 377, 421 (D.N.J. 2000) ("[S]ignificant weight should be given 'to the belief of experienced counsel that settlement is in the best interest of the class, so long as the Court is satisfied that the settlement is the product of 'good faith, arms-length negotiations.'") (citations omitted).

Here, the proposed Settlement is entitled to a presumption of fairness because it was negotiated at arm's-length before an experienced mediator, and Plaintiff's Counsel are highly experienced in similar types of litigation.

           1.   <u>The Proposed Settlement is the Result of Vigorous, Informed, Arms-Length Negotiations</u>

---

[5] A fourth factor, the number of objections to the settlement, is not properly evaluated until the final approval stage. *Smith*, 2007 WL 4191749, at *1 n. 3

As described above, the Settlement Agreement is the result of extensive, vigorous, and informed negotiations conducted before a skilled and experienced mediator.  *Supra* § V.B.2.

2.  <u>The Extent of Discovery at the Time the Settlement Agreement<br>Was Negotiated Supports Preliminary Approval.</u>

The stage at which settlement occurs demonstrates "whether counsel had an adequate appreciation of the merits of the case before negotiating."  *In re Gen. Motors. Corp.*, 55 F.3d at 813.  However, formal discovery is not required before the presumption can apply.  *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 436-37 (3d Cir. 2016) ("In some cases, informal discovery will be enough for class counsel to assess the value of the class' claims and negotiate a settlement that provides fair compensation.").  And courts have approved class action settlements where the litigation is in its early stages and minimal discovery has occurred. *In re Processed Egg Products Antitrust Litig.*, 284 F.R.D. 278, 297 (E.D. Pa. 2012) (granting final approval while noting that "although no formal discovery was conducted in this case during the time of the . . . Settlement negotiations or agreement, Plaintiffs' Interim Co–Lead Counsel conducted informal discovery, including, *inter alia,* independently investigating the merits prior to filing the complaint, which enabled counsel to have sufficient background in the facts of the case, including [the relevant Defendant's] alleged role in it.").

Here, Proposed Class Counsel investigated and analyzed the facts and circumstances relevant to the claims brought by Plaintiff in this case.  *Supra* § IV.D.1.  The information obtained through this process provided a sound basis that allowed Proposed Class Counsel to weigh the terms of the Settlement against the risks of continued litigation.  *Id*.  In addition, the terms of the Settlement are favorable to the Class and meet the demands in the complaint.  Finally, important information was exchanged in connection with both the early resolution discussions between

counsel and at the mediation, all of which enabled an adequately informed resolution of this case to occur.  Barthle Decl. ¶¶ 11, 13, 35.

> 3.  The Proposed Settlement Is Well Within the Range of Approval.

As explained above, the Settlement merits preliminary approval under the "range of reasonableness" standard in light of the fact that it provides an excellent result for members of the Settlement Class and is well within in the range of previously-approved data breach settlements concerning payment cards, and even those involving PHI—which was not disclosed here.  *Supra* § V.B.3.

## VI.   THE PROPOSED NOTICE IS THE BEST NOTICE PRACTICABLE

After preliminary approval, Rule 23(e) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal."  The U.S. Supreme Court has held that notice of a class action settlement must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Bozak v. FedEx Ground Package Sys., Inc.*, No. 11 Civ. 738, 2014 WL 3778211, at *3 (D. Conn. July 31, 2014) (approving notice that provides "notice to the Eligible Settlement Class Members of the terms of the Settlement and the options facing the Settlement Class"); *Wade v. Werner Trucking Co.*, No. 10 Civ. 270, 2014 WL 2535226, at *1 (S.D. Ohio June 5, 2014) (approving "Settlement Notice and Option Form proposed by the Parties" as "fully and accurately inform[ing] the . . . Class Members of all material elements of the Litigation and the Agreement").

Here, the Notice Program in the Settlement Agreement is the best notice practicable and meets all the requirements of Rule 23(c)(2)(B).  The notice program is robust providing numerous

means of notification.  *Supra* § III.D.  Thus, the form and manner of notice proposed under the Settlement will fulfill all the requirements of Rule 23 and due process.  Additionally, Defendant has agreed to pay not only all costs associated with providing notice, but also all administrative costs associated with implementing the Settlement.  Barthle Decl. ¶ 22.  Accordingly, the Court should approve the terms of notice under the Settlement.

## VII.   PROPOSED SCHEDULE

In connection with the preliminary approval of the Settlement, Plaintiff asks the Court to set a date for the Final Approval Hearing, dates for filing papers relating to final approval and attorneys' fees, dates for sending notice to the Settlement Class, and deadlines for any requests for exclusion or objections.  Plaintiff proposes the following schedule:

| Event | Time for Compliance |
|---|---|
| Notice Deadline | 30 days after entry of the Preliminary Approval Order.  S.A. ¶ 3.6. |
| Exclusion/Objection Deadline | 90 days after Notice Deadline.  S.A. ¶¶ 4.1, 5.1. |
| Claims Deadline | 120 days after Notice Deadline.  S.A.¶ 2.5. |
| Deadline for Class Counsel's Motion for Attorneys' Fees, Costs, and Expenses and for Service Award | 14 days before Objection Deadline.  S.A. ¶ 7.4. |
| Deadline for Motion in Support of Final Approval of Settlement | 14 days before the Objection Deadline |
| Responses to Objections and Replies in Support of Motion for Final Approval, and Motion for Attorneys' Fees, Costs, and Expenses, and Service Award | 7 days before Final Approval Hearing |
| Final Approval Hearing | No earlier than 110 days after Notice Deadline |

## VIII.    CONCLUSION

For the foregoing reasons, the Court should enter an order (i) provisionally certifying the proposed Settlement Class; (ii) appointing Plaintiff as Settlement Class Representative of the Settlement Class; (iii) appointing Patrick A. Barthle of Morgan & Morgan Complex Litigation Group and Charles E. Schaffer of Levin Sedran & Berman LLP as Class Counsel for the Settlement Class; (iv) preliminarily approving the Settlement of this action; (v) approving the timing, form, content, and manner of the giving of notice of the Settlement to the members of the Settlement Class; (vi) appointing RG/2 as the Settlement Administrator, and (vii) setting a hearing date for the Final Approval Hearing.

## RULE 7.1(b) CERTIFICATATION

Pursuant to Rule 7.1(b), Local Rules, United States District Court, Eastern District of Pennsylvania, the undersigned has conferred with counsel for the Defendant and is authorized to represent that the Defendant does not oppose this motion.

Dated: March 6, 2020              Respectfully submitted,

/s/ Charles Schaffer
Charles E. Schaffer
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA  19106
Telephone: (215) 592-1500
Facsimile: (215) 592-4663
cschaffer@lfsblaw.com

**MORGAN & MORGAN**
Patrick A. Barthle (*pro hac vice forthcoming*)
201 N. Franklin Street, 7th Floor
Tampa, FL  33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402
pbarthle@ForThePeople.com

*Counsel for Plaintiff and the Proposed Settlement Class*

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that on March 6, 2020, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

*/s/ Charles Schaffer*
Charles E. Schaffer