## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARIE ABDELMESSIH, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br>v.<br><br>FIVE BELOW INC.<br>        Defendant. | Case No.: 2:19-cv-1487<br><br>**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM IN SUPPORT** |

## I.    INTRODUCTION

On November 22, 2019, Plaintiff Marie Abdelmessih ("Plaintiff" or "Representative Plaintiff") and Defendant Five Below Inc. ("Defendant" of "Five Below" and together with Plaintiff, the "Parties"), with the assistance of mediator Bennett G. Picker, *Esq*., reached a settlement (the "Settlement"), which seeks to resolve all claims in the above-captioned action (the "Litigation").[1]  On March 6, 2020, Plaintiff moved for preliminary approval of the Settlement. (Doc. No. 26).  Following a hearing on March 26, 2020, (Doc. 27), the Court ordered supplemental briefing (Doc. 30), which Plaintiff provided on April 27, 2020, (Doc. 32).  On May 7, 2020, this Court entered its order preliminarily approving the Settlement and directing Notice to the Settlement Class.  (Doc. 33) (hereinafter "Preliminary Approval Order").  In accordance with the schedule established by the Preliminary Approval Order, Plaintiff files this Motion for Final Approval of the Settlement.

---

[1] Unless otherwise defined, capitalized terms have the same meaning attributed to them in the Settlement Agreement, previously filed at Docket No. 26-1, and cited to as "S.A."

Final approval of the proposed Settlement is warranted for numerous reasons. First, judicial policy favors pretrial settlements. *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010) (noting the presumption in favor of settlement is "especially strong in class actions and other complex cases where substantial juridical resources can be conserved by avoiding formal litigation") (citation and quotation marks omitted); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation and it should therefore be encouraged.").

Second, the valuable benefits made available pursuant to the Settlement squarely address the issues raised in the Litigation and provide significant relief to Settlement Class Members. The Settlement provides both monetary relief (to compensate Settlement Class Members for inconveniences and losses) and provides that Defendant will confirm its data security business practices designed to prevent a reoccurrence of the release of sensitive personal information to unauthorized individuals. The Settlement also compares favorably with settlements in similar litigation and was reached only after intensive, arm's-length negotiations before a skilled mediator. Accordingly, Plaintiff respectfully submits that the Court should approve the terms and conditions of the Settlement and provide for notice to be distributed to the Settlement Class.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

This Litigation was filed as a class action against Five Below for negligence, invasion of privacy, breach of implied contract, negligence *per se*, breach of fiduciary duty, violation of Florida's Deceptive and Unfair Trade Practices Act, and breach of confidence. Specifically, the operative complaint (the "Complaint," Doc. 1) in the Litigation alleges that Five Below failed both to properly secure and safeguard the payment card data ("PCD") and personally identifiable information ("PII") (collectively "Customer Data") of its on-line customers and provide them with

timely, accurate, and adequate notice when such information had been compromised by an unauthorized third party ("the Security Incident").

Plaintiff filed an original Complaint against Five Below on April 8, 2019. Just days after filing the Complaint, counsel for the Parties engaged in initial discussions regarding potential resolution of the case. (Doc. 26-7 at ¶ 11). In light of these ongoing discussions, including Plaintiff's initial settlement demand in May 2019, Defendant (1) accepted service of the Complaint (Doc. 2), and (2) sought and was granted a stipulated extension of time to respond to the Complaint. *See* (Doc. 3) (noting that "the parties are in the process of exploring a potential early resolution of this matter"); (Doc. 26-7 at ¶ 12).

On July 15, 2019, Five Below filed a Motion to Dismiss. (Doc. 11). Yet, resolution discussions continued, and hence, motions for extensions of time to respond to the Motion to Dismiss and a Joint Motion to Stay Briefing Pending Settlement Discussions were eventually filed and granted, (Doc's 12–18). On November 22, 2019, the Parties, through their respective counsel, engaged in mediation with mediator Bennett G. Picker and were able to reach a negotiated resolution to the Litigation on a class-wide basis that provides both monetary relief for Class Members and confirmation of Defendant's data security business practices. (Doc. 26-7 at ¶ 14). On November 29, 2019, the Parties advised the Court of the Settlement. (Doc. No. 22).

Class Counsel were able to negotiate a resolution for the Class that is fair, reasonable, adequate, and in the best interests of the Settlement Class. (Doc. 26-7 at ¶¶ 21, 23, 35, 36). Consequently, the Parties worked together to negotiate, finalize, and memorialize a comprehensive set of settlement documents, which are embodied in the Settlement Agreement and its exhibits.

On March 6, 2020, Plaintiff moved for preliminary approval of the Settlement. (Doc. 26). Following a hearing on March 26, 2020, (Doc. 27), the Court ordered supplemental briefing (Doc.

30), which Plaintiff provided on April 27, 2020, (Doc. 32), along with a streamlined Claim Form, (Doc. 32-1). On May 7, 2020, this Court entered its order preliminarily approving the Settlement and directing Notice to the Settlement Class. (Doc. 33) (hereinafter "Preliminary Approval Order").

In accord with the Preliminary Approval Order, Notice was provided to the Class. Specifically, on June 9, 2020, the Settlement Administrator, RG/2, arranged for the Email Notice to be sent to the 57,232 class members identified. *See* Declaration of Tina Chiango, attached as **Exhibit 1**, at ¶ 8 (hereinafter "Chiango Decl."). Of the 57,232 emails sent, a total of 1,728 were returned as undeliverable. As a result, RG/2 arranged to have the Email Notice printed and mailed via first-class mail to each of these 1,728 class members on June 18, 2020. Chiango Decl. ¶ 9. While the deadline for Settlement Class Members to object or exclude themselves is not until September 9, 2020, so far only two (2) requests for exclusion, and zero objections, have been received. Chiango Decl. ¶¶ 12–13. Yet hundreds of claims have already been filed, with two months remaining in the claims period, which does not close until October 9, 2020. *See id.* at ¶ 14.

Given this positive reaction of the Class, and the significant benefits provided by the Settlement, this Court should grant Plaintiffs' motion and finally approve the settlement.

## III.   THE PROPOSED SETTLEMENT

### A.  Proposed Settlement Class

The Settlement contemplates relief for the following proposed Settlement Class as defined in the Settlement Agreement:

> [A]ll persons residing in the United States who used a payment card to make a purchase on the Five Below website checkout page during the Security Incident.

S.A. ¶ 1.24. Excluded from the Class are (i) Five Below and its officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class;

(iii) the Judge assigned to evaluate the fairness of this settlement; (iv) the attorneys representing the Parties in the Litigation; and (v) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Security Incident or who pleads *nolo contendere* to any such charge. *Id.*

### B.  Proposed Settlement Terms

The Settlement provides monetary relief for affected class members and data security business practices designed to prevent recurrence of the issues experienced here.  The valuable benefits made available pursuant to the Settlement squarely address the issues raised in the Litigation and provide significant relief to the Settlement Class Members.

#### 1.    Business Practices

Five Below agrees to provide Plaintiff confirmation that it has adopted certain data security measures, including, hiring a dedicated IT security employee, and that, on annual basis, it has implemented penetration testing, employee training related to data security, and an annual audit conducted by a Qualified Security Accessor for compliance with the Payment Card Industry Data Security Standard.  Five Below agrees to provide Plaintiff information about these practices for a period of three years following the execution of the Settlement Agreement.  S.A. ¶ 2.4.

#### 2.    Compensation to Settlement Class Members

Defendant will also make the monetary relief described below available to Settlement Class Members through a claims process.  All Settlement Class Members who submit a valid claim using the Claim Form are eligible for reimbursement of expenses, up to $250 per Settlement Class Member, that were incurred as a result of the Security Incident.  Reimbursable expenses include: (i) unreimbursed bank fees; (ii) unreimbursed card reissuance fees; (iii) unreimbursed overdraft fees; (iv) unreimbursed charges related to unavailability of funds; (v) unreimbursed late fees; (vi)

unreimbursed over-limit fees; (vii) long distance telephone charges; (viii) cell minutes (if charged by minute), Internet usage charges (if charged by the minute or by the amount of data usage and incurred solely as a result of the Security Incident), and text messages (if charged by the message and incurred solely as a result of the Security Incident); (ix) unreimbursed charges, including fraudulent charges, from banks or credit card companies; (x) postage; (xi) interest on payday loans due to card cancelation or due to over-limit situation; and (xii) costs of credit report(s) purchased by Settlement Class Members.  S.A. ¶¶ 2.1, 2.1(a).

Importantly, lost time—a prominent issue for Class Members in responding to any data breach—is also compensable under the Settlement.  Specifically, Class Members with documented fraudulent charges can receive compensation for up to five (5) hours, calculated at the rate of $20 per hour. S.A. ¶ 2.1(b)(i).  Class Members without documented fraudulent charges can receive reimbursement for up to three (3) hours of time, calculated at the rate of $20 per hour, for time spent dealing with replacement card issues or otherwise dealing with the Security Incident.  S.A. ¶ 2.1(b)(ii).

Moreover, Class Members with documented fraudulent charges are also eligible for a $22 payment for each credit or debit card on which documented fraudulent charges were incurred, even where those charges were ultimately reversed.  S.A. ¶ 2.1(c).

The aggregate limit for reimbursable expenses, lost time, and for cards with documented fraudulent charges is $112,000.00.  S.A. ¶ 2.3.  If the total claims exceed the cap, each Settlement Class Member's claim shall be reduced on a pro rata basis.  *Id.*

The Settlement will be administered via a Claims Administration process, whereby Class Members seeking reimbursement will complete and submit a written Claim Form, providing documentation as stated on the Claim Form, to the Claims Administrator, postmarked on or before

the 120th day after the deadline for the completion of notice (the "Claims Deadline").  S.A. ¶¶ 2.5, 2.6.  The Claim Form must be verified by the Settlement Class Member with a statement that his or her claim is true and correct, to the best of his or her knowledge and belief, and is made under penalty of perjury; notarization shall not be required.  *Id.*; *see also* S.A. § IV.8.

### C.    Attorney's Fees, Costs, Expenses and Service Award

The Parties did not discuss the payment of attorneys' fees, costs, expenses and/or the service award until after the substantive terms of the settlement had been agreed upon.  S.A. ¶ 7.1; (Doc. 26-7 at ¶ 24).  Pursuant to the Settlement, Plaintiff may request an award of fees, costs, and expenses of no more than $93,750.  S.A. ¶ 7.2.  Plaintiff may also request a service award for Representative Plaintiff of $1,500.  S.A. ¶ 7.3.  Importantly, these amounts are to be paid by Defendant separate and apart from the monetary relief otherwise made available to the Settlement Class (S.A. ¶¶ 7.2, 7.3), and thus, will not otherwise reduce the amounts available for claimants. (Doc. 26-7 at ¶ 24).  Plaintiff is separately moving for attorneys' fees, costs, expenses, and a service award in the concomitantly filed motion.

### D.    Notice and Administration

Five Below has also agreed to pay for all costs for notice to the Settlement Class, Costs of Claims Administration, and the costs of Dispute Resolution.  S.A. ¶ 2.7.  These amounts also will be provided separate and apart from the monetary relief otherwise made available to the Settlement Class, and thus, will not reduce the amounts available for claimants.   (Doc. 26-7 at ¶ 22). Currently, RG/2 estimates that the total cost for these amounts will be approximately $64,000. Chiango Decl. ¶ 15.

Pursuant to the Preliminary Approval Order, and in accordance with the Settlement Agreement, the Notice Program was implemented by RG/2.  On April 2, 2020, RG/2 caused to be

served by First-Class mail, a Notice of Proposed Settlement to the United States Attorney General and 54 State and Territory Attorney Generals.  Yet, RG/2 has received no objections or other responses from any Attorneys General.  Chiango Decl. ¶ 3.

RG/2 created a website with the URL www.fivebelowcardsettlement.com, which went live on March 31, 2020.  *Id.* ¶ 4. The website includes an online Claim Form, the Long Form Notice, a frequently asked questions ("FAQ") page, a page containing various documents filed with the Court for this Settlement, and a page containing the contact information of the Claims Administrator, amongst other things. *Id.* ¶ 6.  To date, there have been 11,064 visits to the Website. *Id.* ¶ 6.

On June 9, 2020, RG/2, arranged for the Email Notice to be sent to the 57,232 class members it had identified from the files provided by Five Below.  *Id.* ¶¶ 7–8.  Of those, a total of 1,728 were returned as undeliverable.  As a result, RG/2 arranged to have the Email Notice printed and mailed via first-class mail to each of these 1,728 class members on June 18, 2020.  Chiango Decl. ¶ 9.  Accordingly, notice here reached 99.9% of the Settlement Class.  Chiango Decl. ¶ 11.

While the deadline for Settlement Class Members to object or exclude themselves is not until September 9, 2020, so far only two (2) requests for exclusion, and zero objections, have been received.   Chiango Decl. ¶¶ 12–13.   Yet hundreds of claims have already been filed, with approximately two months still remaining in the claims period, which does not close until October 9, 2020. *See id.* at ¶ 14.

## IV.    THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS

Class action certification in conjunction with settlement is well recognized.  *See*, *e.g.*, *Sullivan v. DB Investments, Inc*., 667 F.3d 273, 311 (3d Cir. 2011); *In re Processed Egg Products Antitrust Litigation*, 284 F.R.D. 249, 253-254 (E.D. Pa. 2012).  To do so, the Court must consider whether the settlement class proposed is appropriate under Fed. R. Civ. P. 23.  *See Amchem Prods.*

*v. Windsor*, 521 U.S. 591, 620 (1997); *Rodriguez v. City National Bank*, 726 F.3d 372, 380 (3d Cir. 2013); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 527 (3d Cir. 2004); *Sullivan*, 667 F.3d at 296; *Processed Egg*, 284 F.R.D. at 253-54.

Under Rule 23(a), Plaintiff must demonstrate that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defense of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Under Rule 23(b)(3), Plaintiff must also demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court is to apply a "rigorous analysis" to ensure that each of the requirements of Rule 23 are met. *See Sullivan*, 667 F.3d at 306. However, when a court is "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620; *see also Sullivan*, 667 F.3d at 322 n.56 (same). Under the rigorous analysis standard, the Settlement easily meets each of the requirements of Rule 23(a) and Rule 23(b)(3) for the proposed Settlement Class.

As the Court found in the Preliminary Approval Order, all the requirements for certification of the Settlement Class are met here.

## A.    The Class is Sufficiently Numerous

Rule 23(a)(1) requires that a class be "so numerous that their joinder before the Court would be impracticable." *In re Blood Reagents Antitrust Litig.*, 283 F.R.D. 222, 232 (E.D. Pa. 2012; *Fry v. Hayt, Hyat & Landau,* 198 F.R.D. 461, 467 (E.D. Pa. 2000 ("the class size only need

be large enough that it makes joinder impracticable.").  The numerosity requirement of Rule 23(a) is, therefore, easily met here because based on Five Below's records, the Class includes 57,232 individuals.  Chiango Decl. ¶ 8; *see also* (Doc. 26-7 at ¶ 35); *Stewart v. Abraham*, 275 F.3d 220, 227-28 (3d Cir. 2001) (noting that there is no minimum number to satisfy numerosity and observing that generally requirement is met if potential number of plaintiffs exceeds 40).  In addition, Class Members are geographically dispersed throughout the United States.  There can be no dispute, therefore, that the proposed Class meets the numerosity requirement.

**B.    Common Questions of Law or Fact Exist**

Rule 23(a)(2) requires a showing of the existence of "questions of law or fact common to the class."  "A finding of commonality does not require that all class members share identical claims."  *In re Warfarin*, 391 F.3d at 530 (citation and internal quotation marks omitted).  Indeed, the commonality element requires only that plaintiffs "share at least one question of fact or law with the grievances of the prospective class."  *Id.* at 527-28 (citations omitted); *Stewart v. Abraham,* 275 F.3d. 220., 227 (3d Cir. 2001).  Applying these principles, it is evident that the commonality requirement of Rule 23(a)(2) is easily met in this case.

Here, the central issues posed by this litigation are: (1) whether Defendant disclosed the PCD/PII of Plaintiffs and the Class Members to a third party without authorization; (2) whether Defendant had a duty to protect the PCD/PII of Plaintiff and Settlement Class Members from disclosure; and (3) whether Plaintiff and Settlement Class Members were injured by Defendant's release of their PCD/PII.  *See, e.g.*, (Doc. 1 at ¶ 69).  In short, this case involves a discreet cybersecurity incident that impacted *all* Class Members and gives rise to claims under state law that *all* share the same common nucleus of fact and law regarding Defendant's duty of care in maintaining the Class's PII/PCD.  These are common questions that can be answered with common

proof on a class-wide basis.  Given the presence of these common questions central to the litigation, Rule 23(a)(2)'s requirements are met.

### C.    Plaintiff's Claims are Typical of Those of the Settlement Class

Rule 23(a)(3) requires that the class representative's claims be "typical of the claims . . . of the class."  As the Third Circuit explained:

> The typicality inquiry is intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented.

*Baby Neal v. Casey*, 43 F.3d 48, 57-58 (3d Cir. 1994); *see also In re Warfarin*,  391 F.3d at 532 (finding typicality prong met where "claims of representative plaintiffs arise from the same alleged wrongful conduct"); *In re Blood Reagents*, 283 F.R.D. at 233 ("If a plaintiff's claim arises from the same event, practice or course of conduct that gives rises to the claims of the class members, factual differences will not render that claim atypical if it is based on the same legal theory as the claims of the class.") (citation and quotation marks omitted).  "The typicality criterion focuses on whether there exists a relationship between the plaintiff's claims and the claims alleged on behalf of the class."  NEWBERG ON CLASS ACTIONS § 3:13.

Here, Plaintiff has claims not only similar, but virtually identical, to members of the Settlement Class and one another.  (Doc. 1 at ¶ 70).  Indeed, Plaintiff's claims are typical of those of other Settlement Class Members because Plaintiff's PCD/PII, like that of every other Class member, was part of the Security Incident.  *Id*.  Further, Plaintiff's claims are typical of those of the other Class Members because, *inter alia*, all Members of the Class were injured through the common misconduct of Defendant.  Plaintiff is advancing the same claims and legal theories on behalf of herself and all other Class members, and there are no defenses that are unique to Plaintiff.

11

In order to prevail, therefore, Plaintiff and each Class Member will be required to make the same factual presentation and legal argument with respect to the common questions of liability.

In other words, "the interests of the putative class members [are] sufficiently parallel" to those of Plaintiff "to ensure a vigorous and full presentation of all potential claims for relief by the putative class representatives." *Franks v. O'Connor Corp.*, No. CIV. A. 92-0947, 1993 WL 76212, at *5 (E.D. Pa. Mar 17, 1993); *see also Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 23 (3d Cir. 1992) ("Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rises to the claims of the class members and if based on the same legal theory.") Accordingly, the typicality requirement is satisfied.

**D.    Plaintiff Will Adequately Protect the Interests of the Settlement Class**

Rule 23(a)(4)'s adequacy prong requires that "the representative parties will fairly and adequately protect the interests of the class." The Third Circuit consistently has ruled that adequate representation depends on two factors:

> (a) the Plaintiffs' attorney must be qualified, experienced and generally able to conduct the proposed litigation; and
> (b) the Plaintiffs must not have interests antagonistic to those of the class.

*Weiss v. York Hosp.*, 745 F.2d 786, 811 (3d Cir. 1984) (quoting *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 247 (3d Cir. 1975)); *see also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 312 (3d Cir. 1998). These two components are designed to ensure that class members' interests are fully pursued.

1.    <u>The Settlement Class Has Been Adequately Represented by Class Counsel</u>

Plaintiff has selected and retained as counsel for the Settlement Class: Patrick A. Barthle of Morgan & Morgan Complex Litigation Group and Charles E. Schaffer of Levin Sedran & Berman LLP (collectively, "Class Counsel"). (Doc. 26-7 at ¶ 15). These attorneys possess

extensive experience prosecuting class actions, particularly data breach and data disclosure cases, throughout the nation.  (*Id.* ¶¶ 5–7, 15, 36 and its Exhibits A and B).  Class Counsel and their firms are vastly experienced in litigating and resolving data breach class actions and have developed a strong understanding of the strengths and weaknesses present in such cases and the types of settlement that are fair, reasonable, and adequate under the circumstances.  (*Id.*).

Class Counsel investigated and analyzed the facts and circumstances relevant to the claims brought by Plaintiff in this case.  (*Id.* ¶¶ 9, 16, 26).  The information obtained through this process provided a sound basis that allowed Class Counsel to weigh the terms of the Settlement against the risks of continued litigation.  In addition, the terms of the Settlement are favorable to the Class and meet the demands in the complaint.

> 2.  The Class Representative's Interests Are Not Antagonistic to Those of the Class

There is nothing to suggest that Plaintiff has interests antagonistic to those of the Settlement Class.  *See Dietrich v. Bauer,* 192 F.R.D. 119, 126 (S.D.N.Y. 2000) ("[G]auging the adequacy of representation requires an assessment whether the class representative have interests antagonistic to those of the class they seek to represent.").  Here, Plaintiff and the Settlement Class are equally interested in proving the case as alleged in the Complaint and desire the same outcome in this Litigation, namely, to retrieve the best possible relief from the Defendant.  Indeed, Plaintiff's claims coincide identically with the claims of the Settlement Class.  Because of this, Plaintiff has vigorously prosecuted this case for the benefit of all members of the Settlement Class.  (Doc. 26-7 at ¶ 25).  There is no conflict or any antagonism between Plaintiff and the Settlement Class. (*Id.*).  Accordingly, Plaintiff has the ability and incentive to represent the claims of the Settlement Class vigorously.

Having demonstrated that each of the requirements of Rule 23(a) are satisfied, Plaintiff now turns to consideration of the factors which justify class treatment under Rule 23(b)(3).

**E.  The Settlement Class Satisfies the Predominance and Superiority Requirements of Rule 23(b)(3).**

Certification is appropriate under Rule 23(b) when common questions of law or fact predominate over any individual questions and a class action is superior to other available means of adjudication. *Amchem*, 521 U.S. at 591-94.  These requirements are satisfied here.

1.  Common Questions of Law or Fact Predominate

Under Rule 23(b)(3), class certification is appropriate if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).  In analyzing the predominance factor, the Supreme Court has defined this inquiry as establishing "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 622.  This requirement is satisfied when "common questions represent a significant aspect of a case and . . . can be resolved for all members of a class in a single adjudication." *See Messner v. Northshore Univ. HealthSys*., 669 F.3d 802, 815 (7th Cir. 2012) (quoting 7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedures § 1778 (3d ed. 2011)).  Moreover, any variations in state law here do not outweigh the predominance of factual and legal issues with respect to the constellation of claims in this case in the settlement context. *See Sullivan*, 667 F.3d at 297 ("[V]ariations in state law do not necessarily defeat predominance; and [] concerns regarding variations in state law largely dissipate when a court is considering the certification of a settlement class.").

14

Common questions represent a significant aspect of this case. Several case-dispositive questions could be resolved identically for all members of the Settlement Class, such as whether Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting the PCD/PII of Plaintiff and Class Members; whether Defendant took reasonable steps and measures to safeguard Plaintiff's and Class members' PCD/PII; and whether Defendant adequately, promptly, and accurately informed Plaintiff and Settlement Class Members that their PCD/PII had been compromised. Thus, Settlement Class Members have an interest in adjudication of the issues of law and fact that predominate this litigation, *i.e.*, whether Defendant failed to meet its obligations pertaining to the alleged improper disclosure of the Settlement Class Members' PCD/PII. Accordingly, this prong of Rule 23(b) is satisfied.

2.    A Class Action is the Superior Method of Adjudicating This Case

The second prong of Rule 23(b) is likewise satisfied by the proposed Settlement. As explained in *Amchem*, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Pro. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. Thus, any manageability problems that may have existed in this case are eliminated by the proposed Settlement.

In addition, the Settlement Agreement renders this class action superior to other potential avenues of recovery for Plaintiff and the Class. In fact, this case presents a paradigmatic example of a dispute resolution that effectuates the fundamental goals of Rule 23: (1) to promote judicial economy through the efficient resolution of multiple claims in a single action; and (2) to provide persons with smaller claims, who would otherwise be economically precluded from doing so, the opportunity to assert their rights. Fed. Prac. & Proc. Civ. § 754 (2d ed.). At the same time, the

15

Settlement also preserves the due process rights of each member of the class seeking damages. Accordingly, Plaintiff respectfully requests that the Court provisionally certify the Settlement Class for settlement purposes.

**V.    THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL**

**A.  Applicable Legal Standard for Approval of a Settlement**

Federal Rule of Civil Procedure 23(e) provides that a class action cannot be settled or compromised without approval by the court. Fed. R. Civ. P. 23(e). Judicial approval is required regardless of whether the action is certified for trial and later settled or is certified for purposes of settlement. *Manual for Complex Litigation,* Fourth, § 21.61 (2004). Recent revisions to Rule 23(e)—effective on December 1, 2018—standardize the factors governing final approval, stating that approval is proper upon a finding that the settlement is "fair, reasonable, and adequate" after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> >
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> >
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e).

Here, as explained below, there are no grounds to doubt the fairness of the proposed Settlement and Plaintiff, without opposition from Defendant, respectfully requests that this Court finally approve the proposed Settlement.

**B. The Settlement Satisfies the Amended Rule 23(e) Standard for Final Approval**

1. <u>Adequacy of Representation</u>

As explained above, Plaintiff has retained attorneys with extensive experience prosecuting class actions, particularly data breach and data disclosure cases, throughout the nation and who have zealously represented the Class at all times. *Supra* § IV.D.1  Likewise, there is no conflict or any antagonism between Plaintiff and the Settlement Class; to the contrary, Plaintiff has vigorously prosecuted this case for the benefit of all members of the Settlement Class. *Supra* § IV.D.2.

2. <u>Arm's-Length Negotiations</u>

The Settlement resulted from arm's-length negotiations between experienced counsel with an understanding of the strengths and weaknesses of their respective positions in this Litigation, assisted by a skilled and neutral mediator.  (Doc. 26-7 at ¶¶ 14, 17, 20, 30).  These circumstances weigh in favor of approval.  *See In re Nat'l Football League Players' Concussion Injury Litig.*, 301 F.R.D. 191, 198 (E.D. Pa. 2014) (citing *In re CIGNA Corp. Sec. Litig.*, No. 02-8088, 2007 WL 2071898, at *2 (E.D. Pa. July 13, 2007) (noting that a presumption of fairness exists where parties negotiate at arm's length, assisted by a retired federal judge who was privately retained and served as a mediator)); *Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 439, 444 (E.D. Pa. 2008) (stressing the importance of arms-length negotiations and highlighting the fact that the negotiations included "two full days of mediation"); *see also* NEWBERG ON CLASS ACTIONS § 11:41 (noting that courts usually adopt "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval").

Specifically, as set out in the previously filed declaration of Mediator Bennet G. Picker, the Parties met with, and provided briefing to, him in advance of the mediation session, the

negotiations were at all times arm's length, "the lawyers with whom [he] met zealously represented the interests of their clients," and he "was impressed by the quality of advocacy of counsel on both sides and can attest that there was a significant amount of work that went into reaching the result that was achieved in this case for the benefit of Plaintiff and the class." (Doc. 32-2 at ¶¶ 11–12); *see also* (Doc. 26-7 at ¶ 20).

3.    The Relief Provided for The Class Is Adequate

A.    *The Risks, Costs, and Delay*

The relief offered by the Settlement is adequate considering the risks of continued litigation. Although Plaintiff is confident in the merits of her claims, the risks involved in prosecuting a class action through trial cannot be disregarded.  (Doc. 26-7 at ¶¶ 30–34).  Plaintiff's claims would still need to survive motions practice (*e.g.*, a motion to dismiss and motion for summary judgment) and succeed on a motion for class certification.

Almost all class actions involve a high level of risk, expense, and complexity, which is one reason that judicial policy so strongly favors resolving class actions through settlement:  "[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."  *In re Warfarin*, 391 F.3d at 535; *see also In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 144 (D.N.J. 2013) ("'The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'") (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)); *see also Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010).

This is not only a complex case, but it is in an especially risky field of litigation: data breach.  *See, e.g.*, *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig*., 2010 WL 3341200, at *6 (W.D. Ky. Aug. 23, 2010) (approving data breach settlement, in part, because

18

"proceeding through the litigation process in this case is unlikely to produce the plaintiffs' desired results"). Data breach cases continue to be among the most risky and uncertain of all class action litigation and certification is rare. Through the Settlement, Plaintiff and Class members gain significant benefits without having to face further risk.

While Plaintiff believes she would prevail, there is little directly analogous precedent to rely upon. (Doc. 26-7 at ¶¶ 27–29). Class certification has been denied in other consumer data breach cases and it was only recently that the first litigation class was certified in a consumer data breach case. *See Smith v. Triad of Alabama, LLC*, 2017 WL 1044692, at *6 (M.D. Ala. Mar. 17, 2017). In the recent data breach case involving Facebook, a damages class was denied and only an injunctive relief class was certified. *See Adkins v. Facebook, Inc.*, C 18-05982-WHA, 2019 WL 7212315, at *9 (N.D. Cal. Nov. 26, 2019). Were that to happen here, Class Members would not be able to receive monetary reimbursement and would be left to pursue individual litigation in order to recover their losses.

The lack of direct precedent creates an additional risk in achieving and maintaining class action status throughout trial and even appeal. While Plaintiff feels she would be able to obtain certification outside of a settlement context and maintain certification through trial, this is not a certainty. (Doc. 26-7 at ¶ 29). Additionally, any potential certification would be subject to later appeal and potential reversal. Also, the cost of trial and any appeals would be significant and would delay the resolution of this litigation without the guarantee of any relief. (*Id.* ¶ 28).

The adequacy of the Settlement here is highlighted by the fact that many of the payment card data breach cases that have settled resulted in far less recovery when viewed on a per class member basis than is provided here. For example, The Home Depot data breach case, which involved the theft of 40 million consumers' payment data, included, among other things, a

settlement fund of $13 million from which fund consumers could seek reimbursement.[2]  For the

40 million payment cards at issue, this equates to approximately .33 cents per card.  *See In re the*

*Home Depot, Inc., Customer Data Sec. Breach Litig.,* No. 1:14-MD-02583-TWT, ECF No. 181-2

(March 7, 2016) (Settlement Agreement); *id.*, 2016 WL 6902351, at *6 (N.D. Ga. Aug. 23, 2016)

(order approving settlement).    The Target data breach, which compromised the personal

information of nearly 110 million consumers, resolved with Target establishing a settlement fund

of $10 million (and separately paying $6.75 million in attorney fees). This amounts to

approximately .09 cents per card.  *See In re Target Corp. Customer Data Sec. Breach Litig.*, No.

MDL 14-2522-PAM, ECF No. 358-1 (March 18, 2015) (Settlement Agreement); *id.*, 2017 WL

2178306, at *2 (D. Minn. May 17, 2017) (order approving settlement on remand from the 8th

Circuit).

    Indeed, even cases involving data of greater sensitivity—such as personal health

information (PHI)—typically settle for a lower per class member amount than seen here.  For

example, *In re Anthem, Inc. Data Breach Litig.* was a case involving disclosure of, among other

things, PHI/healthcare related information for 79,150,325 members.  *In re Anthem, Inc. Data*

*Breach Litig.*, 327 F.R.D. 299, 307 (N.D. Cal. 2018).  The total common fund for that settlement

was $115 million, *id.* at 318, which included attorneys' fees of $31,050,000.00 and costs of

$2,005,068.59, as well as $23 million for settlement administration, leaving the final amount to be

distributed to the class at just under $82 million, or approximately $1.09 per class member.  *In re*

*Anthem, Inc. Data Breach Litig.*, 15-MD-02617-LHK, 2018 WL 3960068, at *8, *34 (N.D. Cal.

Aug. 17, 2018).  Similarly, *Curry v. AvMed, Inc.*, which involved the theft of PHI and Social

---

[2] That settlement also included an additional $6.5 million for internet and dark web monitoring
and $7.5 million in attorney fees.

Security numbers from a class of approximately 1.2 million people, had a settlement fund of $2,250,000.00 (exclusive of attorneys' fees), yielding a per capita recovery of around $1.88 per class member.  Case No. 10-cv-24513-JLK, 2014 WL 7801286, at *3 (S.D. Fla. Feb. 28, 2014).

 Here, the aggregate cap of $112,000.00, with a class size of 57,232 individuals, provides approximately $1.95 per Settlement Class Member.  Once the separately funded costs of notice and administration, and attorneys' fees, costs, and expenses and service award are factored in, that per class member comparison only heightens.

Furthermore, the outcome embodied in the Settlement is not only as favorable as other payment card data breach class action settlements, but more favorable given that multiple other payment card data breach cases have resulted in no recovery whatsoever for the plaintiff or class members.  *See, e.g.*, *Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, 3:16-cv-00014-GPC-BLM (S.D. Cal.), Doc. 56 (order dismissing payment card data breach case) (July 11, 2017); *Whalen v. Michaels Stores, Inc.*, 689 F. App'x 89 (2d Cir. 2017) (order affirming dismissal of payment card data breach case).  The same is true for data breach cases involving solely PII, and not PCD.  *See, e.g., Storm v. Paytime, Inc*., 90 F. Supp. 3d 359, 368 (M.D. Pa. 2015) (dismissed for lack of standing as plaintiffs failed to demonstrate that they had suffered actual harm, such as, identity theft); *Longenecker-Wells v. Benecard Servs. Inc*, 658 F. App'x 659, 663 (3d Cir. 2016) (negligence claim barred by economic loss doctrine and breach of implied contract dismissed for failure to plead sufficient allegations).

As set out in Plaintiff's supplemental briefing in support of preliminary approval (Doc. 32), the Settlement is also adequate when viewed in terms of potential successful outcomes at trail.  Specifically, the Settlement provides for amounts of up to: $112,000.00 for claims, $93,750.00 for attorney's fees and costs, and $1,500.00 for a Service Award; as well separate payment for class

notice and administration, which is estimated to cost approximately $64,000. Combined, this amounts to $271,250.00.

Had a common fund based on a Dark Web pricing damages model been obtained at trial, amounts for attorney's fees and costs, a Service Award, and class notice and administration, would have been drawn from the fund. Generally available sources put Dark Web pricing of payment cards with CVV numbers at about $5 per card,[3] which is also what the Complaint refences. *See* (Doc. 1 at ¶ 19) (citing Experian data in footnote 2). With a Settlement Class here of 57,232 individuals, that equates to $286,160.00. Accordingly, it is fair to compare the total value created by the Settlement ($271,250.00) against the Dark Web pricing-based hypothetical common fund ($286,160.00). Thus, the total recovery available in the Settlement nearly matches one of the Class's likely potential outcomes at trial.

But even this Dark Web pricing-based theory is not without significant risk as Defendant disputes the underlying basis for the theory and courts have gone both ways. *Compare In re Marriott International, Inc., Customer Data Sec. Breach Litig.*, No. 19-MD-2879, 2020 WL 869241, at *7–9 (D. Md. Feb. 21, 2020) (finding theory cognizable), *with Chambliss v. Carefirst, Inc.*, 189 F. Supp. 3d 564, 572 (D. Md. 2016) (declining to do so).

The Settlement, however, provides Settlement Class Members the ability to claim amounts significantly in excess of a few dollars, and compensates them for harms that they more acutely feel from a data breach—that is, those described in ¶ 63 of the Complaint. And with a settlement class, the issues associated with Defendant's individualized objections to each person's causation

---

[3]  https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (noting dark web price for payment card with CVV number as $5); https://www.idtheftcenter.org/how-much-is-your-identity-worth-on-the-black-market/ ("[A] card number with the CVV2 code from the back is worth between $5-$8 dollars.").

and damages are obviated by the agreed-upon claims process.  *See In re: Processed Egg Prod. Antitrust Litig.*, No. 08-MD-2002, 2016 WL 3584632, at \*8 (E.D. Pa. June 30, 2016) ("[C]ommon questions of fact and law may predominate with regards to a settlement class, while separate individual questions could nevertheless prevent certification of a litigation class.").

Based on Class Counsel's review of settlement administration data from more than two dozen data breach and data disclosure settlements in which counsel have been involved, counsel believe the amount made available for claims will be sufficient.  All of that data reveals that the total claimed amount in payment card breaches—like this one—averages to less than $2.00 per class member, and often less than $1.00 per class member.

This is, of course, a function of claims rates, as class members are not submitting claims for $1.00.  Rather, claims are necessarily only submitted by those who have been impacted—either by experiencing fraud or, at minimum, reacting to the potential of such fraud by monitoring accounts, changing their payment cards, freezing credit lines, etc.  However, such limited claims rates are not unexpected.  According to *The Aftermath of a Data Breach: Consumer Settlement (April 2014)*, sponsored by Experian Data Breach Resolution and conducted and reported by the Ponemon Institute, 81% of data breach victim respondents did not have any out-of-pocket expenses, and 55% of respondents reported taking no steps to protect themselves and their family from identity theft in the wake of a breach.[4]

 Accordingly, resolutions like the proposed Settlement provide compensation targeted at those who need it; Class Members that experienced fraud or reacted to monitor and/or prevent it.

---

[4] Ponemon Institute LLC, *The Aftermath of a Data Breach: Consumer Settlement* (April 2014), p.7, *available at* https://www.ponemon.org/local/upload/file/Consumer%20Study%20on%20Aftermath%20of%20a%20Breach%20FINAL%202.pdf

Importantly, the Settlement also includes business practices, which is crucial to the adequacy analysis. As discussed *supra*, the Settlement requires Defendant to provide Plaintiff confirmation that it has adopted certain data security measures, including hiring a dedicated IT security employee, as well as annual penetration testing, employee training, and audits for PCI DSS compliance by a Qualified Security Accessor for a period of three years, to ensure Defendant has implemented procedures, policies, and training to protect private and sensitive customer data and to prevent such a disclosure of PII from reoccurring. S.A. ¶ 2.4. These provisions are a key component of the Settlement and provide a significant benefit to Class Members, many of whom continue to shop at Five Below. (Doc. 26-7 at ¶ 17).

Notably, the substantial and immediate benefits achieved by the Settlement avoids the risks, uncertainties, and delays of continued litigation. In contrast, if this case were to continue, Plaintiff and the Settlement Class would face many difficult challenges, including surviving a motion to dismiss, obtaining class certification and maintaining certification through trial, and likely motions for summary judgment. Thus, absent a settlement, Plaintiff faces serious obstacles in this matter. This is another indication that the proposed Settlement is fair, reasonable, and adequate and should be approved. *See In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 216 (E.D. Pa. 2014) ("[I]f the parties were to continue to litigate this case, further proceedings would be complex, expensive and lengthy, with contested issues of law and fact…. That a settlement would eliminate delay and expenses and provide immediate benefit to the class militates in favor of approval.").

### B. *Relief Distribution, Fee Proposal, and Side Agreements*

The Settlement relief will be distributed via a straight-forward claims process utilizing an easy to understand and use Claim Form, SA § IV, ¶¶ 2.1, 2.6., a Claim Form which was further

streamlined at the Court's direction, (Doc. 32-1). Checks for approved claims will then be mailed and postmarked within 60 days of the Effective Date. S.A. ¶ 8.2.

Attorneys' fees, costs, and expenses were negotiated separate, apart, and only after reaching agreement on the class relief. (Doc. 26-7 at ¶ 24); S.A. ¶ 7.1. Defendant has agreed to pay up to $93,750.00 total for attorneys' fees, costs, and expenses, as well as a Service Award of up to $1,500—both amounts to be funded separately from the aggregate cap on monetary relief available to Class Members. S.A. ¶¶ 7.2, 7.3. However the awarded amount remains wholly in the Court's discretion and no order of the Court, or modification, reversal or appeal of any order of the Court, concerning the amount(s) of any attorneys' fees, costs, expenses, and/or service award ordered by the Court will affect whether the judgment is final or constitute grounds for cancellation or termination of this Settlement Agreement. S.A. ¶ 7.5. Attorneys' fees, costs, and expenses, in whatever amount set by the Court, will be paid within thirty days of the Effective Date. S.A. ¶ 7.4.

Finally, there are no Rule 23(e)(3) agreements to be disclosed here. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv).

### 4.  The Settlement Treats Class Members Equitably Relative to Each Other

The last requirement of the new Rule 23(e) is that the Settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement treats all Class Members equitably relative to one another because all who have been damaged are eligible to receive reimbursement for their losses proportional to damages incurred. S.A. ¶ 2.1.

## VI.    THE PROPOSED NOTICE IS THE BEST NOTICE PRACTICABLE

In any proceeding that is to be accorded finality, due process requires that interested parties be provided with notice reasonably calculated, under the circumstances, to apprise them of the

pendency of the action and afford them an opportunity to present their objections. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). That means the settlement notices must fairly apprise the class members of the terms of the proposed compromise and give class members sufficient information to decide whether they should accept the benefits offered, opt out and pursue their own remedies, or object to the settlement. *Id*. Additionally, the notice must be designed so as to have a reasonable chance of reaching a substantial percentage of the class members. *Id*. at 318 (explaining notice must be reasonably calculated to reach interested parties).

Here, as explained above, the Notice Plan was implemented, reaching 99.9% of the Settlement Class. Chiango Decl. ¶ 11. Accordingly, the Court should find the Notice Plan was reasonably calculated to give actual notice to Settlement Class Members of the right to receive benefits from the Settlement, and to be excluded from or object to the Settlement and that the Notice Plan met the requirements of Rule 23 and due process

## VII. CONCLUSION

For the foregoing reasons, the Court should enter an order (i) finally certifying the proposed Settlement Class; (ii) appointing Plaintiff as Settlement Class Representative of the Settlement Class; (iii) appointing Patrick A. Barthle of Morgan & Morgan Complex Litigation Group and Charles E. Schaffer of Levin Sedran & Berman LLP as Class Counsel for the Settlement Class; (iv) finally approving the Settlement of this action; (v) finally appointing RG/2 as the Settlement Administrator, and (vi) finding that the Notice Program satisfied Rule 23 and due process.

## RULE 7.1(b) CERTIFICATATION

Pursuant to Rule 7.1(b), Local Rules, United States District Court, Eastern District of Pennsylvania, the undersigned has conferred with counsel for the Defendant and is authorized to represent that the Defendant does not oppose this motion.

Dated: August 21, 2020                    Respectfully submitted,

*/s/ John Yanchunis*
**MORGAN & MORGAN**
John A. Yanchunis
Patrick A. Barthle
201 N. Franklin Street, 7th Floor
Tampa, FL  33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402
jyanchunis@ForThePeople.com
pbarthle@ForThePeople.com

Charles E. Schaffer
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA  19106
Telephone: (215) 592-1500
Facsimile: (215) 592-4663
cschaffer@lfsblaw.com

*Counsel for Plaintiff and the Proposed Settlement Class*


## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that on August 21, 2020, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.


*/s/ John Yanchunis*
John Yanchunis

27